COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-425-CR

 

 

NIKOLAI IVANOV KARENEV                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

         FROM COUNTY
CRIMINAL COURT NO. 1 OF DENTON COUNTY

 

                                              ------------

 

                     MEMORANDUM OPINION[1]
ON REMAND

 

                                              ------------








A jury convicted Appellant Nikolai Ivanov Karenev
on one count of harassment.  The trial
court sentenced him to 120 days=
confinement in Denton County Jail, probated for eighteen months, and a $500
fine.  In three points, Appellant urges
charge error and challenges the constitutionality of the harassment  statute and the legal sufficiency of the
evidence.  The Texas Court of Criminal
Appeals has already held that Appellant forfeited any challenges to the statute
by not raising them in the trial court.[2]  Because we hold that the evidence is legally
sufficient and that any charge error is harmless, we affirm the trial court=s
judgment.

                                                 Facts

Attorney Elena Karenev filed for divorce from
Appellant in October 2004, and Appellant moved out of their residence in
December 2004.  Elena testified at
Appellant=s trial that after he moved out,
he began leaving between ten and twenty voice mail messages for her a day.  She testified that the messages threatened
her safety and her professional reputation in the community.








Appellant had also sent Elena e-mail messages in
March 2005.  The email messages were
written almost entirely in Bulgarian.  At
trial, the State introduced translations of five e-mails sent by Appellant to
Elena.  In the e-mails, as read in court
by Elena, Appellant asked Elena, AWhen are
you going to quit practicing black magic?@  He told her, ALet me
tell you what the future holds . . . .  I will raise [our child] . . .
.  Your mother will be paralyzed.  You will enter the med [sic] house, or I will
send you to jail.@ 
He called her Anot just a whore . . .
something much scarier.@ 
In another e-mail, he wrote, AIf I
tell you that you are a pathological liar, a dirty scum, . . . awful
thief, . . . a dirty user, [a] sick nymphomaniac, . . . a creature of
the devil, and that will be an understatement.@  He told her, AIt is
time to pay for all of the filthiness which you have caused during your
pathetic life.@

In March 2005, Elena reported Appellant=s
behavior to the police.  Based on their
investigation, the police obtained a warrant for Appellant=s
arrest.  The police arrested Appellant on
March 30, 2005, and Appellant was charged by information in April 2005.  An amended information was filed in the trial
court in October 2005.  The information
charged one count of harassment based on the telephone messages Appellant left
for Elena and one count of harassment based on his Aelectronic
communications@ to Elena.  Count two elaborates the charge based on
electronic communications:  Ato wit:
sending harassing and/or threatening e-mail to Elena@ with
the intent to harass, annoy, alarm, abuse, torment, or embarrass her.

Appellant was tried to a jury in October
2005.  The jury charge=s
instruction on harassment stated that a person commits harassment if

with intent to harass,
annoy, alarm, abuse, torment or embarrass another, he (1) makes repeated
telephone communications anonymously or in a manner reasonably likely to
harass, annoy, alarm, abuse, torment, embarrass, or offend another or (2) sends
repeated electronic communications in a manner reasonably likely to harass, annoy,
alarm, abuse, torment, embarrass, or offend another.








This definition of harassment comes from the language of Texas Penal
Code section 42.07(a).[3]

The charge instructed the jury to find Appellant
guilty on count two if they found beyond a reasonable doubt that he had, with
the requisite intent, sent Elena Aelectronic
communications@ in a manner reasonably likely
to cause the intended effect, Ato
wit:  [sent] harassing and/or threatening
e-mail to Elena@ with the intent to harass,
annoy, alarm, abuse, torment, or embarrass her. 
That is, the application paragraph of the jury charge omitted the word Arepeated@ and
used the term Aemail.@

The jury acquitted Appellant on the first count
of telephone harassment and found him guilty on the second countCharassment
by sending repeated electronic communications. 
Appellant timely appealed.

                              Legal
Sufficiency of the Evidence








In his third point, Appellant contends that there
is legally insufficient evidence to show that he intended to harass, annoy,
alarm, abuse, torment, alarm, embarrass, or offend the complainant.  In reviewing the legal sufficiency of the
evidence to support a conviction, we view all of the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.[4]  Section 42.07(a)(7) of the Texas Penal Code
provides that a person commits the offense of harassment if, with the intent to
harass, annoy, alarm, abuse, torment, or embarrass another, he sends repeated
electronic communications in a manner reasonably likely to harass, annoy,
alarm, abuse, torment, embarrass, or offend another.[5]

The Texas Court of Criminal Appeals has addressed
the sufficiency of evidence of intent and the question of inferring intent from
the record as a whole:

Although the intent to kill
is easily inferred from pointing a gun and shooting, the intent to defraud or
to affect the course of an investigation cannot necessarily be inferred from
the mere making of a statement or proof of its inaccuracy.[6]

 

And, in the explanatory
footnote, the court noted,

 








In cases of forgery and fraud, it is difficult to
prove intent.  This Court has wisely held
that intent or guilty knowledge cannot be inferred from the mere passing of a
forged instrument.  Indeed, to hold
otherwise would create the danger that the unknowing and accidental passing of
a forged instrument could effectively become a strict liability offense.  The issue of intent is of such overriding
importance in a case of forgery that it effectively becomes the focus of the
State=s
case.  Establishing intent in such cases
is so crucial and so difficult to do that, as a practical matter, evidence of
extraneous offenses is nearly always admissible.  While it is hypothetically possible that a
case of forgery could be established by direct evidence, such as eyewitness
testimony, most cases of forgery rest on circumstantial evidence.[7]

We understand this analysis of intent to require
us to view the entire record not just for evidence of acts by the parties but
also for evidence of Appellant=s state
of mind to determine whether there is sufficient evidence in the record to
support the jury=s conclusion regarding his
intent in sending the emails.[8]  It is not sufficient that the evidence show
that Elena felt harassed, annoyed, alarmed, abused, tormented, or embarrassed
when she received the repeated emails; the evidence must also show beyond a
reasonable doubt that Appellant sent repeated emails with the specific intent
to harass, annoy, alarm, abuse, torment, or embarrass her.








The record reflects that Elena had been married
twice before her marriage to Appellant. 
Her first husband testified that during their divorce proceedings, Elena
had falsely accused him of a crime in an attempt to force a favorable property
settlement.  Her second husband testified
that during child custody litigation, Elena had tried to prosecute him for
calling her house to try to talk to his daughters.  The police refused to pursue the
complaint.  Appellant=s former
wife testified that Elena had filed assault charges against her and that she
had been acquitted.  She also testified
that Elena had forged her signature on a deed and notarized it.

The State offered a series of five email messages
received between March 23 and March 29, 2005, all written almost entirely in
Bulgarian.  The prosecution relied
without objection on translations of the messages provided by Margarita
Stefanova Helstrom, an acquaintance of Elena=s who
was not a certified translator.  Helstrom
testified without objection that the telephone calls and the emails were
harassment.

Appellant countered Helstrom=s
translations with the testimony of Tatiana Vassileva Gilbard, a Bulgarian
translator.  She pointed out some
significant omissions in the translations of the telephone calls and some
errors and disagreed with Helstrom=s
interpretation of some of the language in the emails.  But she stated that the translation of
telephone calls in State=s exhibit 10 was Apretty
good.@

In all, the State offered five emails.  The first is dated March 23, 2005, and
provides, 

Elena,








I pray for you every day
and I light up candles in the church.

 

I hope that it helps you.

 

Nick

The second is dated March 26, 2005. 
It provides,

Elena Petkova,

If you ask me there is no
purpose to change your passwords... 
Unless you change them every hour it is totally useless.

 

I thought you might want to know...

Rest in peace!

Nick Karenev

Elena testified that Petkova was her maiden name and that she used it
as well as Karenev and Kareneva. 
Appellant testified that he had emailed her about the passwords because
she had called him and asked if she needed to change her password.  He told her that she did not, and she asked
him to put it in writing, so he sent the email. 
He testified that until March 15, they communicated regularly by email.  He also testified that she asked him
questions about the computer system at her office because he had been the
administrator and had set up the system.








Helstrom translated the final line as ARest in
peace.@  She testified that it was meant as
irony.  Gilbard, though, testified that
the phrase in Bulgarian was AHaide
ostani si s zdrave@ and that in Bulgarian, Azdrave@ means Ahealth.@  Literally translated, the phrase means Aremain
in good health.@[9]  She testified that the phrase did not mean Arest in
peace.@

The remaining three emails appear to be dated
March 26, March 28, and March 29, 2005. 
They are longer and appear to reveal anger.  In those emails, Appellant predicted Elena=s
future:  he would raise their child, her mother
would be paralyzed, and Elena would be either in the Amed
house@ or
jail.  He called her Anot just
a whore . . . something much scarier,@ a
pathological liar, a dirty scum, a thief, a sick nymphomaniac, and a creature
of the devil.  He told her, AIt is
time to pay for all of the filthiness which you have caused during your
pathetic life.@

At trial, Appellant explained that while in
Bulgaria he had run into fortune tellers upon whom Elena had relied and that
they had asked him to relay the message regarding her future.  He testified that in the email he was doing
as they had requested.








Appellant and Elena were in the midst of divorce
proceedings when the subject emails were sent. 
The emails regarded the divorce, and, at least on occasion, were
responses to emails sent by Elena.  In
the emails, Appellant urged her to reach an agreement in their divorce to
prevent their entire estate from going to the attorneys.

Applying the appropriate standard of review, we
hold that the evidence sufficiently demonstrates at a minimum Appellant=s intent
to annoy Elena when he sent the emails. 
The jury, as trier of fact, was the sole judge of the credibility of
Appellant=s explanation that he was just
trying to be helpful, and was therefore free to reject any or all of his
explanation.[10]  We overrule Appellant=s third
point.

                  Constitutionality
of Penal Code Section 42.07(a)(7)








In his second point, Appellant argues that
section 42.07(a)(7) of the Texas Penal Code is unconstitutionally vague and
offends the First Amendment protection of speech.  On original submission, we interpreted this
complaint as a facial challenge to the statute=s
constitutionality and held that the statute was void for vagueness.[11]  On the State=s
petition for discretionary review, however, the Texas Court of Criminal Appeals
overruled existing precedent and held that a defendant must now challenge the
facial constitutionality of the statute in the trial court and cannot raise the
issue of the void statute for the first time on appeal.[12]  Because Appellant failed to challenge the
constitutionality of the statute in the trial court, the Texas Court of
Criminal Appeals held that Appellant had forfeited the complaint.[13]

In her concurrence, Judge Cochran posited that
Appellant=s second point is actually Aan
underground attack upon the sufficiency of the evidence . . . to
prove that [he] sent >repeated=
harassing emails.@[14]  In the interest of justice, we note that the
evidence before the jury included three emails that appear to reveal
anger.  In those emails, Appellant
predicted a bad future for Elena and called her names.

The statute as written requires only that a
defendant send more than one annoying email. 
Elena was annoyed, and the jury could infer that annoying her was
Appellant=s intent.  Accordingly, the evidence was sufficient to
show that he sent Elena repeated harassing emails.  We overrule Appellant=s second
point to the extent that it is a challenge to the sufficiency of the evidence.








                                            Jury
Charge

In his first point, Appellant argues that the
trial court erred in instructing the jury that it could convict on less than a
finding of repeated emails.  The jury
charge provides in pertinent part,

Now, if you find from the evidence beyond a reasonable doubt that on
or about the 15th day of November, 2004, through the 29th day of March, 2005,
in the County of Denton of the State of Texas, [Appellant] did then and there
with the intent to harass, annoy, alarm, abuse, torment, or embarrass Elena
. . . , send electronic communications to [her] in a manner
reasonably likely to harass or annoy or alarm or abuse or torment or embarrass
or offend the said Elena . . . , to-wit: sending harassing and/or
threatening e-mail to [her] with the intent to harass, annoy, alarm, abuse,
torment or embarrass [her], then you will find [Appellant] guilty as charged in
the Information in Count II.

 

Appellant argues that by using the word Aemail,@ the
court allowed the jury to convict if they found that Appellant sent a single
electronic communication.  Additionally,
as Appellant appears to implicitly point out, the application paragraph does
not use the word Arepeated.@  Because the necessary element Arepeated@ is not
in the application paragraph, we agree that the jury charge is erroneous.[15]








When there is error in the court=s charge
but the appellant did not preserve it at trial, we must decide whether the
error was so egregious and created such harm that the appellant did not have a
fair and impartial trialCin short, that Aegregious
harm@ has
occurred.[16]  Egregious harm is the type and level of harm
that affects the very basis of the case, deprives the defendant of a valuable
right, or vitally affects a defensive theory.[17]








In making an egregious harm determination, Athe
actual degree of harm must be assayed in light of the entire jury charge, the state
of the evidence, including the contested issues and weight of probative
evidence, the argument of counsel and any other relevant information revealed
by the record of the trial as a whole.@[18]  The purpose of this review is to illuminate
the actual, not just theoretical, harm to the accused.[19]  Egregious harm is a difficult standard to
prove and must be determined on a case-by-case basis.[20]

The abstract portion of the jury charge correctly
sets out the law.  It also defines the
term Aelectronic
communication@ as

a transfer of signs,
signals, writing, images, sounds, data, or intelligence of any nature
transmitted in whole or in part by a wire, radio, electromagnetic, photoelect[ro]nic,
or photo-optical system.  The term
includes a communication initiated by electronic mail, instant message, network
call, or facsimile machine.

 

The statute uses but does not define the term Arepeated.@  When the statute does not define a necessary
term, we look to its common usage.[21]  The Random House Webster=s
Unabridged Dictionary defines repeated as Adone,
made, or said again and again.@[22]  As we held above, the evidence sufficiently
shows repeated emails.








Considering the jury charge as a whole, it is
clear that the jury was instructed that they must find Appellant sent Aelectronic
communications,@ that is, that he sent more than
one electronic communication between November 15, 2004, and March 29, 2005, and
that the nature of the electronic communications was Aemail@ as
opposed to instant messages, network call, or facsimile.  That is, the charge used Aemail@ as the
generic term to explain what kind of electronic communications the jury was
required to find that Appellant sent to Elena before they could convict
him.  Accordingly, we hold that any error
in the charge is harmless.  We overrule
Appellant=s first point.

                                             Conclusion

Having overruled Appellant=s three
points, we affirm the trial court=s
judgment.

 

 

LEE
ANN DAUPHINOT

JUSTICE

PANEL:  DAUPHINOT, GARDNER, and
MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: September 24,
2009











[1]See Tex. R. App. P. 47.4.





[2]Karenev v. State, 281 S.W.3d 428, 434
(Tex. Crim. App. 2009) (Karenev II).





[3]Tex. Penal Code Ann. ' 42.07(a) (Vernon
2003).





[4]Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex.
Crim. App. 2007).





[5]Tex. Penal Code Ann. ' 42.07(a)(7).





[6]De La Paz v. State, 279 S.W.3d 336, 349B50 (Tex. Crim. App.
2009).





[7]Id. at 350 n.46 (quoting Parks
v. State, 746 S.W.2d 738, 740 (Tex. Crim. App. 1987)).





[8]See id. at 349B50.





[9]See Bulgarian‑English,
English‑Bulgarian Dictionary 49, 98, 131, 134 (Hippocrene Books ed.
2006).





[10]See Tex. Code Crim. Proc.
Ann. art. 38.04 (Vernon 1979); Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000); Brown v.
State, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied, 129
S. Ct. 2075 (2009).





[11]Karenev v. State, 258 S.W.3d 210, 218
(Tex. App.CFort Worth 2008) (Karenev
I), rev=d, Karenev II, 281
S.W.3d at 434.





[12]Karenev II, 281 S.W.3d at 434.





[13]Id.





[14]Id. at 441 (Cochran, J.,
concurring).





[15]See Tex. Code Crim. Proc.
Ann. art. 36.14 (Vernon 2007); Dinkins v. State, 894 S.W.2d 330, 339
(Tex. Crim. App.), cert. denied, 516 U.S. 832 (1995); Escobar v.
State, 28 S.W.3d 767, 779 (Tex. App.CCorpus Christi 2000, pet. ref=d); Garro v. State,
Nos. 05-00-01539-CR, 05-00-01554-CR, 2002 WL 2005494, at *9 (Tex. App.CDallas Aug. 20, 2002,
pet. ref=d) (not designated for
publication).





[16]Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1985) (op. on reh=g); see Tex. Code Crim. Proc. Ann. art.
36.19 (Vernon 2007); Allen v. State, 253 S.W.3d 260, 264 (Tex. Crim.
App. 2008); Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).





[17]Allen, 253 S.W.3d at 264 &
n.15; Almanza, 686 S.W.2d at 172.





[18]Almanza, 686 S.W.2d at 171; see
generally Hutch, 922 S.W.2d at 172B74.





[19]Almanza, 686 S.W.2d at 174.





[20]Ellison v. State, 86 S.W.3d 226, 227
(Tex. Crim. App. 2002); Hutch, 922 S.W.2d at 171.





[21]Smith v. State, No. AP‑75479,
2009 WL 1212500, at *12 (Tex. Crim. App. May 6, 2009).





[22]Random House Webster=s Unabridged Dictionary
1633 (2d ed. 1998).